**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| TRAMPUS RESLER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:12-cv-100 (WLS) |
| | : | |
| KOYO BEARINGS USA LLC, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER

Before the Court is Koyo Bearing USA LLC's Motion for Summary Judgment. (Doc. 18.) For the reasons that follow, Koyo's motion is **GRANTED in part** and **DENIED in part.**

### PROCEDURAL BACKGROUND

Plaintiff Trampus Resler brought suit against Koyo Bearings USA LLC for claims arising under the Americans with Disabilities Act and the Family and Medical Leave Act. Resler is a former press operator for Koyo who injured his right arm while disassembling a machine. He claims Koyo refused to reasonably accommodate his work restrictions from that injury, subjected him to a hostile work environment, and then trumped up disciplinary action against him in order to fire him. Further, Resler argues Koyo interfered with his FMLA rights by failing to recognize he needed FMLA leave and by retaliating against him for requesting leave.

The Parties have completed discovery, and Koyo now moves for summary judgment on all claims. Koyo contends that Resler cannot establish his *prima facie* case of discrimination because he was neither disabled nor qualified for the job. Further, Koyo contends Resler did not provide evidence of discrimination and cannot rebut its legitimate, non-discriminatory reason for his termination—namely, that Resler was disciplined fourteen times for producing defective parts. Koyo also argues Resler

1

cannot establish the *prima facie* cases for failure to accommodate, a hostile work environment, or FMLA interference. After review of the briefing, pleadings, and record evidence, the Court grants summary judgment on all claims, except failure to accommodate.

## STATEMENT OF FACTS

### I.   Background

Koyo operates a car manufacturing plant in Cairo, Georgia. On January 20, 2003, Resler began working at the Cairo plant for Koyo's predecessor, Ingersoll Rand, as a "process tech." From 2007 until his termination in 2011, Resler worked as "Press Setter Operator," requiring him to operate a press and produce quality parts. During his stint as a Press Setter Operator, Steve Walker was Koyo's human resources manager and Katie Womack was a human resources analyst. Resler reported to a number of shift supervisors, including Brian True, Randy Green, Brian Crowder, and Art Courtney.  He also reported to superintendent Mike Sellers through the chain of command.

In 2008, Ingersoll Rand sold the Cairo plant to Timken. After taking over the Cairo plant, Timken distributed an "Associate Handbook" and a "Total Rewards" handbook to employees. Resler received these materials, agreed to familiarize himself with them, and in fact read them. Therefore, Resler understood he could be disciplined and fired for "willful, careless or negligent use of company property" and for "performing improperly on the job."

In addition, the Timken Associate Handbook described its FMLA policy and included a section called "Leave Notice." Under that policy, Resler agreed to provide notice of his FMLA leave to Timken if he required leave. Further, if he wanted to take leave, Resler was to obtain the requisite forms from Human Resources or a plant HR representative. Resler knew to inform HR if he needed FMLA leave. He also saw Koyo's FLMA posting in the cafeteria. When Koyo took over the Cairo plant, it informed employees it would continue using Timken handbooks. Nevertheless, Resler recalls that Koyo often created new policies that deviated from the book, though he does identify which ones.

While employed by Timken, Resler applied for and took FMLA leave in 2009 to care for his wife after she had surgery. He applied for and received an extension on that leave after it expired.

## II.   Pre-Injury Discipline

From 2007 through 2010, Resler received discipline and counseling sessions from a variety of supervisors for performance issues. On September 28, 2007, Shift Coordinator Randy Green counseled Resler for disabling sensors on a machine, which could lead to defective parts. Resler admitted to disabling the sensors, but attributed the problem to a defective machine. Shift Coordinator Ben Brinkley then counseled Resler on April 21, 2009, for "[f]ailure to monitor part quality per the Control Plan." Michael Sellers counseled Resler in July 2009 because he allegedly turned off a "short feed switch," which could produce defective parts. Later that month, Art Courtney counseled Resler because he allegedly "ran a container" of defective parts. Courtney counseled Resler on two more occasions for producing defective parts. Likewise, on August 27 and September 23, 2009, Sellers counseled Resler for failing to record quality checks.

On September 28, 2009, Sellers issued Resler a "Written Warning" because of a "[h]istory of failure to comply with Standard Work." Resler admits this warning was a culmination of previous write-ups. The warning explained that Resler's failure to comply with work requirements "will result in further disciplinary action up to and including termination." In March and July 2010, Resler again received write-ups because he allegedly failed to record his quality checks and because he "ran approximately 7,500" defective parts. On July 17, 2010, Sellers issued Resler a "Final Written Warning" for "poor work quality" that required Koyo to scrap 6,000 parts at a cost of $3,519. Sellers placed Resler on a six-month review to monitor his performance.

Resler admits both written warnings and several other counseling notes were "legitimate."

### III.   <u>Resler's injury and treatment</u>

On August 25, 2010, Resler injured himself at the Cairo plant while attempting to loosen a bolt with a wrench. As Resler attempted to loosen the bolt, the bolt head snapped off, causing his elbow to spring forward and strike a nearby machine. He developed a bruise on his elbow, experienced swelling, and his fingers tingled as if he had hit his "funny bone." During a work break, Resler reported the incident to Brian Crowder, his shift coordinator.

About two weeks after the incident, the pain in Resler's elbow increased. He visited a primary care physician who ordered an x-ray and MRI. When he returned to work, Resler reported the doctor's visit to Crowder, who then notified HR.

On September 28, 2010, Resler completed and submitted an Employee Accident Report for the August 25 injury. After receiving notice of the injury, Steve Walker referred Resler to Dr. Garland Register Jr., an approved doctor under Koyo's workers' compensation carrier.  Dr. Register prescribed Tramadol, "very mild pain" medication, and 600 miligrams of Motrin, and released Resler to work without restrictions. Walker accompanied Resler to his appointment and entered the exam room with him.

Unsatisfied with Dr. Register, Resler asked Walker and Womack for a list for company-approved doctors. After refusing to produce one, Walker and Womack referred Resler to Dr. David Miller. Dr. Miller concluded that Resler had nerve damage.

Resler returned to Dr. Register on October 29, 2010, this time accompanied by Womack. Dr. Register again found that Resler could work without restriction. Resler claims that when he reported Dr. Miller's findings on nerve damage to Dr. Register, Dr. Register told him to "shut up" because he was the doctor.

Resler told Womack he needed to see a different doctor after the way Dr. Register treated him. Koyo referred Resler to Dr. Thomas Carstens, an orthopedist. On November 16, 2010, Dr. Carstens released Resler to work with a twenty-five-pound lifting restriction and instructed him to return in a month for a follow-up appointment. Dr. Carstens extended the lifting restrictions in December 2010 and January 2011 and referred him to a neurologist.

According to Resler, his right arm is not "totally disabled," and he does not believe anyone at Koyo perceived him as disabled.

### IV.   Evidence on Reasonable Accommodation

Superintendent Michael Sellers learned of Resler's lifting restriction from Human Resources. Management assigned another employee, Jerry Jones, to assist Resler with any lifting exceeding twenty-five pounds. In addition, management instructed Resler to request help whenever necessary. Resler could also ask "anyone in the area," such as a "shift coordinator or another operator," for assistance.

After about a week, however, Resler was relocated to another area of the plant. Jones was told he no longer needed to assist Resler. And although Resler knew he could ask for help, he would often have to wait too long for assistance and would only receive help "every once in a while." Rather than wait, Resler would instead dump the bins with his left arm.

Resler's job also required him to lift dyes that weighed sixty-five to ninety-five pounds. Because he worried that waiting for assistance would slow production, Resler would move the dyes with his left arm rather than waiting for assistance. Resler was never counseled or disciplined for slow production. Nor did he miss any work because of his injury.

Resler never told anyone at Koyo that he needed FMLA leave. And because his doctors always cleared Resler for work, no one at Koyo knew he needed FMLA leave.

### V.   <u>Resler's Termination</u>

On December 7, 2010, Crowder counseled Resler for producing "questionable" parts and placed a note in his file. Resler alleges that a trainee may have produced the parts. In any event, if Resler worked with a trainee that day, he would have been responsible for any mistakes because the trainee was not a "certified operator."

On January 23, 2011, Sellers issued Resler a "Disciplinary Action Form" for producing about 3,000 defective parts. In the form, Sellers noted that "[b]ased on a history of poor quality, we feel that Termination is warranted." On February 2, 2011, Sellers and Walker fired Resler.

## VI.    <u>Heath Brison</u>

Like Resler, Heath Brinson worked as a Press Setter Operator at Koyo's Cairo plaint. He, too, received counseling and discipline from a variety of supervisors for performance issues. In January 2008, Courtney counseled Brison for failing to log his quality checks. Similarly, in May 2009, Sellers counseled Brison for failure to log his quality checks with sufficient frequency. He received a written warning that month for also failing to log quality checks. Sellers again counseled Brinson for quality checks in October 2009. In July 2010, Brinson was counseled because he "may have" produced defective parts. In addition, Brinson was counseled on a variety of other occasions for performance issues unrelated to work quality, such as attendance and cleanliness.

Brinson was not fired for quality issues.

## VII.    <u>Resler's Post-Koyo Job Search</u>

Shortly after his termination from Koyo, Resler applied for jobs that were "close" in physical requirements to his position at Koyo. For example, in March 2011, he applied for a forklift operator position at Georgia Pacific Paper Mill. He also applied for a roustabout position with Transocean Oil Rig, which requires mopping, cleaning, maintaining the ship, painting, and cooking. He also applied for a welder position with American Muffler Shop.

Resler's current physician, Dr. David Rehak, has not told him to stay away from any class or category of jobs, though he placed him under permanent lifting restrictions.

<u>DISCUSSION</u>

## I.    <u>Summary Judgment Standards</u>

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990).  A fact is "material" if it is a legal element of the claim under

the applicable substantive law and it might affect the outcome of the nonmoving party's case. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celotex Corp.*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must provide "enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251 (1986)).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex Corp.*, 477 U.S. at 322–23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.   Disparate Treatment under the ADA

The Americans with Disabilities Act prohibits employers from discriminating against "qualified individual[s] on the basis of disability." 42 U.S.C. § 12112(a). When a plaintiff attempts to prove a disability discrimination claim with circumstantial

evidence, as Resler does, courts employ the *McDonnell-Douglas* burden-shifting analysis from Title VII cases. *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). To establish a *prima facie* case of disability discrimination, the plaintiff must show that (1) he has a disability; (2) he was qualified for the job; (3) and that he was discriminated against because of his disability. *Greenberg v. Bellsouth Telecomms, Inc.*, 498 F.3d 1258, 1264 (11th Cir. 2007). Once the plaintiff establishes his *prima facie* case, the employer must articulate a legitimate, non-discriminatory reason for the challenged action. *Wascura*, 257 F.3d at 1242. The plaintiff then must produce evidence to permit a reasonable factfinder to conclude that the employers' preferred reasons for the adverse action were a pretext for discrimination. *Id.*

The Court doubts Resler can satisfy the third prong of his *prima facie* case. But even if he could, Koyo would still be entitled to summary judgment. Resler has failed to show that Koyo's legitimate, non-discriminatory reason for his termination was a pretext for discrimination. Koyo produced abundant evidence it repeatedly counseled and disciplined Resler for poor work quality. Before Resler's injury, Koyo managers counseled him ten times for producing bad parts or for failing to follow basic protocol. He received written warnings twice. A few months before his injury, Koyo placed Resler on a six-month review period.  The warning that preceded the review period explained that "[f]ailure to comply with the . . . action plan will result in further disciplinary action up to and including termination." Koyo terminated Resler after he continued to produce defective parts.

In order to show that his employer's reasons were a pretext, Resler must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). Resler attempts to carry that burden by showing, first, that he did not engage in poor performance and, second, that Koyo did not discipline a similarly situated person outside of his protected class.

8

On the first showing, Resler attempts to blame performance issues on equipment failure and a trainee. But the relevant inquiry is not "whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118–19 (10th Cir.2007) (citation omitted); *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("[F]or an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith *believed* plaintiff's performance to be unsatisfactory.").

Nothing in the record suggests Koyo did not in good faith believe Resler had performance problems. Multiple supervisors at different times counseled and disciplined Resler for the same or similar issues. Most of this discipline or counseling occurred well before his injury. Resler admitted during his deposition that both the Written Warning and Final Written Warning were "legitimate" and that the Written Warning was a culmination of previous write-ups. Furthermore, a review of Resler's counseling forms shows he often failed to convey his current explanations for the performance issues, even though he offered other justifications. And assuming Resler did have a trainee on one of the days in question, he failed to produce evidence to dispute testimony that he would have been responsible for the trainee's work product.

Resler also failed to produce a sufficient comparator to create an issue of fact for a jury. To determine whether employees are similarly situated, courts consider "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). A comparator's conduct must be "nearly identical" in quality and quantity "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). Heath Brinson is not an appropriate comparator. Before his termination, Resler was counseled or disciplined a total of fourteen times, while Brinson was only counseled for quality issues on six occasions. In further contrast to Brinson, Resler's discipline was

typically clustered within short periods of time. Resler, for example, had quality issues four times within two months, which culminated in a written warning. The record actually suggests that Resler received *more* leeway than Brinson. Resler was counseled eight times before receiving his first written warning, while Brinson was counseled just three times before his. And although Brinson received counseling and discipline for other issues, such as attendance and cleanliness, these issues were different in type than Resler's problems.

For those reasons, the Court concludes that Resler has failed to carry his burden of showing that Koyo's reasons were a pretext. Summary judgment in favor of Koyo on this claim is therefore appropriate.

### III.   Failure to Accommodate

Resler argues Koyo failed to reasonably accommodate his disability because it did not provide him lifting assistance, did not assign him a light-duty position, and did not give him a short-term leave of absence. To establish a *prima facie* claim for a failure to accommodate, Resler must show (1) he is disabled; (2) he is a qualified individual; and (3) that Koyo discriminated against him by its failure to reasonably accommodate his disability. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001); *McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010).

The Court concludes genuine issues of material fact exist on Resler's failure to accommodate claim. First, Resler has produced sufficient evidence to create a jury question on whether he was in fact disabled. A person is disabled under the ADA if he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1)(A). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, *lifting*, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (emphasis added). Since Congress passed the ADA Amendments Act, courts have found genuine issues of fact on whether lifting restrictions around twenty-five pounds are substantially limiting. *Tate v. Sam's East, Inc.*, No. 3:11-cv-87, 2013 WL 1320634, at *10 (E.D. Tenn. Mar.

29, 2013) (collecting cases); *see Moore v. Chilton Cnty. Bd. of Educ.*, No. 2:12-cv-424-WKW, 2014 WL 813634, at *10–12 (M.D. Ala. Mar. 3, 2014). Construing the evidence in favor of Resler, the record shows that he has a permanent lifting restriction on an arm that is a constant source of pain. Therefore, the evidence is sufficient to create a jury question on disability.

Second, Resler produced sufficient evidence for a jury to infer he was a qualified individual. Resler worked for Koyo or its predecessors for seven years before his termination. The record is barren of evidence Resler was unqualified for the position for the majority of his tenure or that he had performance issues before 2007. "[I]n cases where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred." *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) (quoting *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495 n.2 (11th Cir.1987)); *see Harris v. H& W Contracting Co.*, 102 F.3d 516, 524 (11th Cir. 1996) (finding genuine issue of material fact on qualification issue because plaintiff "did not have any real problems with . . . performance . . . 'until the end'"). There is therefore a genuine issue of material fact on the second element of Resler's *prima facie* case.

Third and finally, the Court finds that Resler has created a genuine issue of material fact on whether Koyo reasonably accommodated his injury by providing lifting assistance. Although it is undisputed Resler first received lifting assistance, after about a week, this assistance ended, leaving Resler to wait upwards of three hours for help. According to Resler, he did not receive any assistance for ninety percent of his requests. Koyo is correct that an employer is not liable if an employee's actions break down the accommodation process. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). But, here, Resler repeatedly requested assistance only to have those requests left unanswered. There is also evidence Koyo denied his requests to take time off due to pain and the dizziness caused from pain medication.

While the Court denies summary judgment on Resler's claim for lifting assistance, it grants summary judgment on his claim regarding the reassignment to a

light-duty position. There is no evidence Resler requested such a position, and "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gatson v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999). Accordingly, the Court grants summary judgment on this iteration of Resler's claim for failure to accommodate.

### IV.   Hostile Work Environment

Koyo also moves for summary judgment on Resler's hostile work environment claim. The Eleventh Circuit has never recognized a hostile work environment claim under the ADA. *Gillard v. Ga. Dep't of Corr.*, 500 F. App'x 860, 868 (11th Cir. 2012). In any event, Resler's claim is due to be denied because he did not properly plead such a claim in his complaint. Nowhere in the Complaint did Resler plead facts giving rise to a hostile work environment claim, so he cannot now rely on that claim at the summary judgment stage. *Menzie v. Ann Taylor Retailer Inc.*, No. 13-11277, 2013 WL 6487349, at *4 (11th Cir. Dec. 11, 2013).

Resler has also failed to unearth facts giving rise to harassment sufficiently "severe or pervasive to alter the terms and conditions of employment." *See Wolfe v. Postmaster Gen.*, 488 F. App'x 465, 469 (11th Cir. 2012) (assuming that hostile work environment claim exists under the Rehabilitation Act  and noting that prima facie case would require harassment sufficient severe or pervasive to alter the terms and conditions of employment). To satisfy that element of his purported claim, Resler would have to show he subjectively perceived the alleged harassment as severe or pervasive, and that his perception was objectively reasonable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). The Supreme Court has identified four factors to guide the objective portion of this analysis: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (citing to Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, (1997)).

Resler cannot establish the objective component of his claim. He asserts Koyo harassed him by attending his doctor appointments, denying him accommodations, and indicating he would "experience some negative action if he missed work." Resler also identifies a passing remark from an HR representative that Resler was faking a disability to cover poor performance. None of these incidents, together or apart, amount to severe or pervasive harassment. Resler does not provide any citation to the record to refute Koyo's evidence that company policy required HR representatives to attend doctor appointments for workers' compensation claims. And the Eleventh Circuit has held that far worse conduct did not amount to a hostile work environment. *See, e.g.*, *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 806–08 (11th Cir. 2012); *Mendoza*, 195 F.3d at 1247–48.

Accordingly, the Court grants summary judgment on this claim.

### V.      FLMA interference

The FMLA entitles an eligible employee to twelve workweeks of leave during any twelve-month period because of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" means "an "illness, injury, impairment, or physical or mental condition" involving either "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(A)–(B). Under the Department of Labor's regulations, "continuing treatment by a health care provider" requires, among other things, a "period of incapacity of more than three consecutive, full calendar days." 29 C.F.R. § 825.115.

Although an employee need not specifically assert his or her right to take leave under the FMLA, the employee must provide sufficient notice to make an employer aware of the need for qualifying leave. 29 C.F.R. §§ 825.302(c); 825.303(b); *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005).

The FMLA provides a private cause of action against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. § 2615(a)(1). "To establish an interference claim, 'an employee need only demonstrate

by a preponderance of the evidence that he was entitled to the benefit denied.'" *Hurlbert v. St. Macy's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001)).

In this case, Resler has failed to show Koyo interfered with his FMLA rights for two reasons. First, Resler did not offer sufficient evidence to show he was eligible for FMLA leave. Nothing in the record suggests Resler's elbow injury or his illness from pain medication qualified as "serious health condition[s]." In fact, Resler made no attempt in his briefing to explain how he satisfied that requirement. All of Resler's doctors released him for work, and he has not identified any evidence he experienced a three-day (or even a one-day) period of incapacity.

Second, even if Resler did qualify to take FMLA leave, he never provided Koyo sufficient notice of a need to take leave. It is undisputed that Resler never requested FMLA leave. And Koyo had no reason to suspect he needed it. As already noted, Resler's doctors repeatedly released him for work. And Resler himself refused to take time off because of his belief, unsupported by the record, that absences would have adversely affected his employment. At most, Resler requested to leave early a few days for nausea. But Koyo did not possess information beyond the fact of the injury itself and Resler's occasional sickness to suggest he had a serious health condition that required leave.

To the extent Resler argues Koyo failed to provide notice of the FMLA, this claim lacks merit. Resler did not dispute with citation to evidence that Koyo printed FMLA procedures in the employee handbooks and posted FMLA procedures in the cafeteria. *See Kaylor v. Fannin Reg'l Hosp., Inc.*, 946 F. Supp. 988, 999 (N.D. Ga. 1996) (holding that employer satisfied notice requirements by posting notice in break room and in employee handbook). In addition, the undisputed facts show that Resler knew he could take FMLA leave.

Therefore, Koyo is entitled to summary judgment on this claim.

### VI.    FMLA retaliation

Koyo is also entitled to summary judgment on Resler's FMLA retaliation claim. To establish a *prima facie* case of retaliation under the FMLA, Resler must show (1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Hurlbert*, 439 F.3d at 1297.  Retaliation claims, like interference claims, require the employee to establish he qualified for FMLA leave. *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003). Once again, Resler made no effort to establish he qualified for FMLA leave. Accordingly, and for the reasons discussed *supra*, the Court concludes he has failed to establish he was qualified for leave and, thus, Koyo is entitled to judgment as a matter of law on the retaliation claim.

Koyo's motion for summary judgment is **GRANTED** on this claim.

### CONCLUSION

For those reasons, Koyo's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part.** Summary judgment is granted on all claims except Resler's failure to accommodate claim, as stated in this Order. This case will be noticed for the June 2014 Albany trial term by separate Order.

**SO ORDERED**, ___27th___day of March, 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**